UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JORDAN CARTER | CIVIL ACTION NO. 16-0370 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SWIFTSHIPS, L.L.C. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 23) filed by the Defendant, Swiftships, L.L.C. ("Swiftships"). Plaintiff, Jordan Carter ("Carter") has sued Swiftships for alleged discrimination against her on the basis of her pregnancy in violation of the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C.§ 2000e(k), as amended by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and in violation of the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. 23:342. Swiftships moves for summary judgment dismissing all of Carter's claims. After careful consideration of all parties' submissions, and the law applicable before the Court, Swiftships' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Carter is a former employee of Swiftships. Swiftships is a shipbuilder which designs and constructs vessels for government and commercial entities. See Record Document 23-2 at 1, ¶ 1. On March 19, 2016, Carter initiated this lawsuit, asserting that she has been discriminated against on the basis of her pregnancy in violation of the PDA. See Record Document 1 at 4, ¶ 18. Additionally, Carter alleges corresponding violations under the LEDL. See id. The parties conducted discovery on these claims. Discovery is

now complete, and Swiftships submits that summary judgment on all of Carter's claims is appropriate. In support of its Motion for Summary Judgment, Swiftships presents the Court with affidavits of Jeff Leleux ("Leleux"), the President of Swiftships, Danny Knope ("Knope"), the Purchasing Manager at Swiftships, and Shehraze Shah ("Shah"), the Chief Executive Officer of Swiftships. Carter presents the Court with affidavits from her mother, Tamara Thomas, her step-father, Michael Thomas, and herself. Furthermore, she submits to the Court email correspondence and other documents in order to defeat the present Motion for Summary Judgment.

On April 22, 2013, Carter was hired by Swiftships to the role of Contracts Administrator. See Record Document 23-2 at 1, ¶ 2. Carter alleges that within a year of being hired as Contracts Administrator, she was promoted to the position of Contracts Manager. See Record Document 1 at 2, ¶ 6. She alleges that an increase in pay was supposed to accompany the position, but she never received the increase. See id. In September of 2014, Carter informed Shah and Rickie Bertrand ("Bertrand"), Human Resources Manager, that she was pregnant. See id. at 2-3, ¶ 8, see Record Document 23-5 at 8, ¶ 5. On November 23, 2014, Carter received an email from Shah advising her that he "appointed [Knope] as the [C]ontracts [M]anager and would like for [Carter] to report to him going forward for all [her] contracting responsibilities." Record Document 27-3 at 1. Carter alleges that she was replaced in this position by Knope, a Caucasian-male employee, "who was being promoted to the Contracts Manager position previously held by Carter." Record Document 1 at 3, ¶ 10. After the purported demotion, Carter alleges that she began to receive fewer work assignments and that the demotion occurred two months after informing Shah and Bertrand that she was pregnant. See id. at ¶ 11.

She further claims that on or around December 26, 2014, she was notified that her employment with Swiftships was being terminated effective January 9, 2015 on account of a reduction in force. See id. at 3-4, ¶ 13. She alleges that Knope, her "replacement," was not terminated as part of the reduction in force. See id. at 4, ¶ 14.

Swiftships denied the allegations of discrimination. Swiftships argues that in 2014 there were economic developments that negatively impacted the company such as losing a bid to construct vessels for the Kingdom of Saudi Arabia that was estimated to be worth $ 1 billion dollars in gross revenue and the drastic decline in oil prices in 2014. See Record Document 23-2 at 2-3, ¶¶ 10-11. According to Swiftships, Shah and Leleux made a joint determination that a reduction in force in the areas of general administration and production was required to reduce overhead and expenses. See id. at 3, ¶ 12. Swiftships argues that there was no need for Carter's position due to the lack of anticipated work and that her pregnancy did not factor into the decision. See id. at ¶¶ 15-16.

## LAW AND ANALYSIS

I.  **Legal Standards**

   A.  **The Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact

or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325, 106 S. Ct. 2548, 2554; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

Affidavits are a permissible and common form of evidence that may be used to oppose a motion for summary judgment. See Celotex Corp., 477 U.S. at 323, 106 S. Ct. 2548, 2553. To be competent summary judgment evidence, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, a party may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches sworn testimony without explanation. See S.W.S. Erectors v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). If a party submits such a "sham" affidavit, the Court may properly disregard or strike such an affidavit, grant summary judgment for the movant, and award attorney's fees to the opponent of the submitting party. See id. at 495-96; see also Doe ex rel. Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 385-86 (5th Cir. 2000); see Fed. R. Civ. P. 56(h).

### B. Standard of Proof under the PDA and LEDL

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Laxton v. Gap Inc., 333 F.3d 572, 577 (5th Cir. 2003) (citing 42 U.S.C. § 2000e–2(a)). Claims brought under the PDA are analyzed like any other Title VII discrimination claims. See id. at 578. Furthermore, Louisiana courts apply the same analysis to LEDL claims that federal courts apply to PDA claims.[1] Therefore, the Court's analysis of Carter's claims under the PDA will apply to Carter's LEDL claims as well.

Claims of discrimination can be established through either direct or circumstantial evidence. See id. at 578. In the present action, the parties disagree over what burden-shifting framework should govern as different frameworks apply, depending on whether

---

[1] "Louisiana's anti-discrimination law is substantively similar to the federal statute; it is thus appropriate to consider interpretations of the federal statute." Brittain v. Family Care Servs., Inc., 34-787 (La. App. 2 Cir. 6/20/01), 801 So.2d 457, 461.

a party has presented direct or circumstantial evidence. Nonetheless, for purposes of the present Motion for Summary Judgment, the Court will treat the evidence offered by all parties as circumstantial evidence. Accordingly, the Court will analyze Carter's claims using the McDonnell Douglas burden-shifting framework. Under the McDonnell Douglas framework, a plaintiff must first establish a *prima facie* case of employment discrimination. In order to establish a *prima facie* case of discrimination, a plaintiff must show that she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, that other similarly situated employees were more favorably treated." Adcock v. Sunquest Properties Inc., 421 F. App'x 446, 448 (5th Cir. 2011). Upon a plaintiff meeting her *prima facie* burden of showing employment discrimination, the burden shifts to the defendant-employer to offer a legitimate nondiscriminatory reason for the adverse employment action. See Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001). If a defendant is able to produce a legitimate reason, then the presumption of discrimination vanishes. See id. at 512. A plaintiff must now prove by a preponderance of evidence that the legitimate reasons offered by a defendant were not true reasons, but were a pretext for discrimination. See id. In order to meet this burden, a plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 967–68 (5th Cir. 2016).

**II. Analysis of Carter's Demotion Claim under the PDA and LEDL**

The Court will first address Carter's alleged demotion claim utilizing the McDonnell Douglas framework. Next, the Court will address Carter's termination claim utilizing the

McDonnell Douglas framework. However, before the Court addresses these claims, the Court deems it necessary to address Swiftships' objection to the summary judgment evidence presented by Carter.

### A.     Objection to Summary Judgment Evidence

Before getting into the analysis, Swiftships' objection to the affidavits of Carter, Michael Thomas, and Tamara Thomas should first be addressed. Swiftships contends that the three affiants' affidavits contain hearsay resulting in the affidavits being inadmissible at trial. However, Swiftships has failed to offer material to substantiate its objection. Rather, Swiftships only offers conclusory assertions that the affidavits constitute hearsay and should not be considered by the Court. On the other hand, Carter has provided the Court with case law detailing why the Court should consider the affidavits. First, Carter argues that the affidavits fit within the party-opponent exception of the Federal Rules of Evidence 801(d)(2)(A) and 801(d)(2)(D). To bolster this argument, Carter cites to a case decided by the Fifth Circuit that is factually similar to the present action. See Magiera v. City of Dallas, 389 F. App'x 433, 435 (5th Cir. 2010). Moreover, Carter argues that if the party-opponent exception does not apply, which the Court finds it does, Federal Rule of Evidence 613(b) applies. In support of this argument, Carter cites to a case decided by another Court within this jurisdiction that held that if a declarant is expected to be called as a witness at trial, then the affidavit is admissible for summary judgment purposes. See Fontenot v. Safety Council of Sw. Louisiana, No. 16-CV-84, 2017 WL 2727266, at *4 (W.D. La. June 23, 2017). Carter, Michael Thomas, and Tamara Thomas are all expected to be called upon to testify at trial. Accordingly, at this stage in the litigation, it appears Carter has met her burden regarding the admissibility of the

affidavits. Therefore, the Court overrules the objection lodged by Swiftships in its Memorandum in Support of its Motion for Summary Judgment.

**B.      Carter's *Prima Facie* Case Concerning the Alleged Demotion**

As indicated supra, Carter must show that she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, that other similarly situated employees were more favorably treated." Adcock v. Sunquest Properties Inc., 421 F. App'x 446, 448 (5th Cir. 2011). It is undisputed that Carter as a pregnant female is a member of a protected class. Moreover, it is undisputed that Carter was qualified for her position whether it be Contracts Administrator or Contracts Manager. However, elements three and four are disputed by the parties. Therefore, as to the third element, Carter must provide sufficient evidence to raise a genuine issue of material fact as to whether she has been subjected to an adverse employment action, i.e., a demotion.

First, the Court will address whether this jurisdiction considers a demotion to be an adverse employment action. The Fifth Circuit has a strict interpretation of what constitutes an adverse employment action. See Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004). Under Title VII principles, . . . an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. Id. at 282 (citations omitted). "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003) (citing Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)). Moreover, "[a] demotion also qualifies as an ultimate employment decision under Title VII." Pegram, 361 F.3d at 282

(citing Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999)). A plaintiff need not show a decrease in pay, title or grade to prove a demotion occurred. See Alvarado v. Texas Rangers, 492 F.3d 605, 613 (5th Cir. 2007). Courts will find a demotion occurred if the plaintiff shows that the new position is objectively worse, i.e., such as being less prestigious or less interesting or providing less room for advancement. See id. at 613.

Swiftships argues that Carter was not demoted. In support of this argument, Swiftships relies on the affidavit of Leleux. In the affidavit, Leleux attests that "any position changes, promotions, demotions, or pay increases must be authorized by [him] and at no point in time did he promote or demote Carter." Record Document 23-5 at 1. Moreover, Carter never received a pay increase as a result of Carter's alleged promotion as Contracts Manager. See id. at 1-2. Carter has presented evidence that she was the Contracts Manager for Swiftships at one point in time based on email correspondence with company employees as well as other evidence showing that Carter held the position of Contracts Manager. See Record Documents 27-1-6 and 27-9. Furthermore, Carter cites to her own affidavit as well as the affidavits of her mother and step-father attesting that Shah told Knope, who then relayed the message to Carter, her mother, and step-father, that because of her pregnancy she would not be able to handle the responsibilities required of a Contracts Manager at Swiftships. Based on the evidence offered by Carter, the Court finds that Carter has raised a genuine issue of material fact as to whether the alleged demotion from Contracts Manager to Contracts Administrator was objectively worse. See Alvarado v. Texas Rangers, 492 F.3d 605, 613 (5th Cir. 2007). Under the objective standard, it would be reasonable for the trier of fact to determine that the move from Contracts Manager to Contracts Administrator was objectively worse. Furthermore,

Carter potentially suffered a decrease in title based on the evidence offered by Carter, which the Court finds raises a genuine issue of material fact. See Ackel, 339 F.3d at 385. Accordingly, Carter has raised a genuine issue of material fact as to whether her demotion equated to an adverse employment action.

Next, the Court must determine whether there is a genuine issue of material fact as to the fourth element. The fourth element requires Carter to show that she was replaced by someone outside of her protected class. In this case, Knope, as a Caucasian-male, would be considered an individual outside the protected class. However, Swiftships argues that Carter never held the position of Contracts Manager because the promotion was never approved by Leleux; thus, it was impossible for Knope to replace Carter as Contracts Manager. However, Carter has presented evidence that would raise a genuine issue of material fact to the question of whether she was replaced by someone outside her protected class. For example, in Carter's affidavit she attests that Shah informed Knope, who then informed Carter, that because Carter would have to take maternity leave after giving birth, Shah intended to have Knope take Carter's place as Contracts Manager with Carter working under Knope as Contracts Administrator. See Record Document 27-9 at 1.

Accordingly, the Court finds that Carter has raised genuine issues of material facts as to elements three and four in order to meet her *prima facie* burden of proving discrimination.

### C. Whether Swiftships Presented a Legitimate Nondiscriminatory Reason for the Alleged Demotion

As indicated supra, upon Carter meeting her *prima facie* burden of employment discrimination, the burden shifts to the Swiftships to offer a legitimate nondiscriminatory

reason for the adverse employment action. See Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001). Swiftships presents the Court with affidavits from Leleux, Shah, and Knope attesting to the fact that there was a shortage of contracting work based on the company losing a bid for vessel construction work for the Kingdom of Saudi Arabia Border Guards Fleet. Moreover, those employees of Swiftships cite that the 2014 decline in oil prices had a substantial negative impact on the companies' prospects for additional business. Accordingly, the Court finds that Swiftships has presented legitimate nondiscriminatory reasons for Carter's alleged demotion. Therefore, Swiftships has met its burden.

### D. Whether the Reasons Offered by Swiftships for the Demotion Constituted Pretext

Carter must now prove by a preponderance of evidence that the legitimate reasons offered by Swiftships were not true reasons, but were a pretext for discrimination. See Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001). In order to meet this burden, Carter "must put forward evidence rebutting each of the nondiscriminatory reasons . . . [Swiftships] articulates." Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 967–68 (5th Cir. 2016).

In the present action, Carter has provided affidavits from herself, her step-father, and her mother that contain alleged statements made by Danny Knope, who assumed Carter's duties. In both Michael Thomas and Tamara Thomas's affidavits, they attest under penalty of perjury that they had an encounter with Knope at the supermarket. See Record Document 27-1 and 27-2. During this encounter, Knope informed Carter's mother and step-father that Swiftships' officers, including Shah, had informed him that Carter was demoted because she was pregnant and they feared that she therefore would not be able

to work as many hours after giving birth. See Record Document 27-1 at 2. Furthermore, in Carter's affidavit, she attests under penalty of perjury that on November 24, 2014, she and Knope met in his office where Carter questioned why she was demoted. See Record Document 27-9 at 1. Carter attests that Knope explained that he met with Shah a few weeks before the demotion where Shah informed Knope that because Carter would have to take maternity leave after giving birth, he intended to have Knope assume Carter's position as Contracts Manager with Carter working under Knope as Contracts Administrator. See id. Furthermore, according to Knope, Shah stated that he needed someone in the Contracts Manager position that would not be distracted by a newborn child and viewed it as a favor to Carter, i.e., giving Carter more time to spend with her child. See id. Accordingly, based on these affidavits presented to the Court, the Court finds that Carter has raised a genuine issue of material fact as to whether Swiftships' reasoning for demoting Carter was pre-textual.

Therefore, Swiftships' Motion for Summary Judgment as to Carter's demotion claim is **DENIED**.

### III. Analysis of Carter's Termination Claim under the PDA and LEDL

#### A. Carter's *Prima Facie* Case Concerning Her Termination from Swiftships

First it is undisputed that Carter, as a pregnant woman, is a member of a protected class. Moreover, it is undisputed that Carter was qualified for the positions of both Contracts Administrator and Contracts Manager. Finally, it is undisputed by the parties that Swiftships' termination of Carter was an adverse employment action. However, element four appears to be in dispute. Accordingly, the final issue left for consideration by the Court is whether Carter (1) was replaced by an individual who was not a member

of her protected class, or, (2) that other similarly situated employees were more favorably treated. See Adcock v. Sunquest Properties Inc., 421 F. App'x 446, 448 (5th Cir. 2011). First, the Court finds that Carter was not replaced by an individual who was not a member of her protected class because the evidence indicates that Carter's position as Contracts Administrator was never filled. See Record Document 23-5 at 3, ¶ 12. Therefore, it is impossible for her to be replaced. In order for the first prong of element four to be met, Carter would have needed to be terminated from her position as Contracts Administrator and the position filled by a male. However, it appears that Carter argues that she was otherwise discriminated against, or treated less favorably than a "similarly situated" individual (Knope), who was not a member of the protected class. In order to meet the "similarly situated" prong, "a plaintiff must show that he was treated less favorably than others 'under nearly identical circumstances.'" Morris v. Town of Indep., 827 F.3d 396, 401 (5th Cir. 2016) (citing Willis v. Cleco Corp., 749 F.3d 314, 320 (5th Cir. 2014)). In determining whether an employee is "similarly situated," the Fifth Circuit considers a number of factors such as:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated.

Morris v. Town of Indep., 827 F.3d 396, 401 (5th Cir. 2016) (citing Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)). The goal of the "similarly situated" analysis is to ensure that the challenged action was taken under nearly identical circumstances. See Morris, 827 F.3d at 401.

According to Carter, Knope was treated more favorably under nearly identical circumstances. However, Carter has failed to present the Court with evidence that would raise a genuine issue of material fact as to whether Knope and Carter were "similarly situated" employees. Knope's job title with Swiftships was Purchasing Manager. See Record Document 23-5 at 5, ¶ 1. According to Knope's affidavit, he merely "assumed oversight of the contracting process." Id. at ¶ 3. Consequently, Carter has failed to present evidence that the Purchasing Manager and Contracts Administrator shared the same job responsibilities. It is unclear whether Carter and Knope shared the same supervisor. Carter and Knope not sharing the same job or responsibilities weighs heavily in favor of the Court finding that Carter and Knope were not "similarly situated" employees. Accordingly, the Court finds that Carter has failed to raise a genuine issue of material fact as to whether Carter and Knope were "similarly situated" employees. Therefore, Carter has failed to meet her *prima facie* burden as it concerns her termination claim.

### C. Whether Swiftships Presented a Legitimate Nondiscriminatory Reason for the Alleged Termination

However, assuming *arguendo*, that Carter was able to meet her *prima facie* burden, Swiftships must present a legitimate nondiscriminatory reason for the alleged termination. With respect to Carter's demotion claim, the Court earlier found that Swiftships offered legitimate nondiscriminatory reasons for the alleged demotion. The alleged reasons offered by Swiftships for Carter's termination was due to a shortage of contracting work based on the company losing out on a bid for vessel construction work for the Kingdom of Saudi Arabia Border Guards Fleet. Moreover, the 2014 oil bust had a substantial negative impact on Swiftships prospects for additional business. Swiftships also cites to a chart in Leleux's affidavit that indicates between July of 2014 and February

of 2017, Swiftships laid off 16 males as opposed to four females. See Record Document 23-5 at 2-3.This strengthens Swiftships contention that the company was suffering due to the drop in oil prices and needed to reduce its force rather than laying off Carter as a result of her pregnancy. Accordingly, the Court finds that Swiftships has presented a legitimate nondiscriminatory reason for the alleged termination. Therefore, Swiftships has met its burden and the burden now shifts back to Carter to show the reasons offered were pre-textual.

### D. Whether the Reasons Offered by Swiftships for the Termination Constituted Pretext

Assuming *arguendo*, Carter must now offer evidence to rebut the reasons for the termination offered by Swiftships. See Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 967–68 (5th Cir. 2016). If Carter can produce evidence to cast doubt on the Swiftships' stated reason, the case should go to trial. See Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir. 1996). Swiftships argues that Carter has failed to offer evidence that would show that the decision by Swiftships was pre-textual, i.e., Carter fails to offer evidence rebutting the explanation of the loss of the Saudi Arabian contract and the decline in oil prices as the reasons for Carter's termination. Furthermore, Swiftships argues that the affidavits presented to this Court by Carter do not concern her termination, but rather her demotion. Carter argues that the temporal proximity between Swiftships learning of Carter's pregnancy and her termination supports the Court finding that the decision to terminate Carter was pre-textual. However, the Fifth Circuit has held that "although the temporal proximity between the employer learning of the plaintiff's pregnancy and her termination may support a plaintiff's claim of pretext, such evidence without more is insufficient." Fairchild, 815 F.3d at 968.

In the present action, Carter has failed to offer evidence that would raise a genuine issue of material fact as to whether Swiftships' decision to terminate Carter was pre-textual. Carter relies on the temporal proximity (3 months) of informing Shah of her pregnancy and her termination from Swiftships, but has failed to offer other evidence to strengthen her temporal proximity argument as required by the Fifth Circuit. The evidence offered by Carter only concerns her demotion. Moreover, the affidavits the Court relies on in denying Swiftships' Motion for Summary Judgment as to Carter's demotion claim fail to mention anything related to Carter's termination from Swiftships. Accordingly, the Court finds that Carter has failed to raise a genuine issue of material fact as to whether Swiftships' reasoning for terminating her was pre-textual. Therefore, Swiftships' Motion for Summary Judgment as to the termination claim lodged by Carter should be **GRANTED**.

## CONCLUSION

Swiftships' Rule 56 Motion for Summary Judgment (Record Document 23) is **GRANTED IN PART AND DENIED IN PART**. Carter's demotion claim under the PDA and LEDL **SHALL PROCEED**. However, Carter's termination claim under the PDA and LEDL is hereby **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 19th day of January, 2018.